Peaeson, J.
 

 The action is under the 38th section of the 88th ch. Rev. Stat. entitled “Pilots.”
 

 It being now admitted that the provision of the section is not unconstitutional, the main question is, does the act of 1846, ch. 49, repeal this section ?
 

 We are clearly of opinion that it does not, and that it is only affected by the act of 1846, by having the rate of compensation charged according to its general terms, (the terms used being general) on purpose to meet and accommodate it to any change that might be made in the rate of pilotage — (that is, the amount to be paid by a vessel that a
 
 pilot has charge of).
 
 The object being to make the rate of compensation allowed by this section correspond at all times with rate of the pilotage. So that, if the latter was made lower or higher, or altered in any way, the former would be altered in the same way, by force of the general terms, without the necessity of any special provision. In other words, the fomer was fixed on a sliding scale, and was always to be precisely the same as the latter.
 

 This view of the Statute is shown to be correct by examination of its several sections. The
 
 thirty-sixth section,
 
 in
 
 general terms, without saying at what bar,
 
 provides that any branch pilot, (viz., one duly commissioned) who shall refuse or neglect to go out to a vessel, shall pay a penalty of forty dollars.
 

 The thirty-seventh section,
 
 in the same general terms, provides, “that if, after a pilot is on board, the vessel is driven off the coast, the pilot shall be entitled to one dollar a day extra.”
 

 The thirty-eighth section,
 
 in the same general terms, without saying
 
 at what bar,
 
 or
 
 fixing upon any definite terminus on the inner side,
 
 provides, “ that if a branch pilot shall go off to any vessel
 
 bound in,
 
 and offer to pilot her
 
 over the bar,
 
 the master or
 
 *338
 
 commander of snob vessel, if he refuses totake such pilot, shall
 
 fay
 
 and
 
 satisfy
 
 to such pilot, if not previously furnished with one, the
 
 same sum as is allowed by law for conducting such vessel in.”
 

 The thirty-ninth section
 
 applies to pilots acting under the authority of the Commissioners of Navigation for Newbern, Eden-ton, Washington, and old Topsail inlet, and provides that pilot-age shall not be paid by a vessel under sixty tons, unless she has made a signal for pilot, &c.
 

 The fortieth section
 
 fixes the rates that branch pilots authorized by the Commissioners of Navigation, for Edenton, Washington, Newbern or Oeracocke shall be entitled to demand of any vessel they may have charge of, from the other side of the bar to Beacon Island Roads or Wallace's Channel; and also fixes the pilotage through the swashes.
 

 The forty-first section
 
 applies to pilots for old Topsail inlet, and fixes the rates they are entitled to for such vessel as they have charge of, from the other side of the inlet into Bogue Road, or Shacklesford Road.
 

 The forty second section
 
 applies to pilots for Bogue inlet, and fixes the pilotage they are entitled to for bringing a vessel into said inlet.
 

 The act of 1846 changes the rates of pilotage that was allowed by the fortieth section to pilots authorized by the Commissioners of Navigation for Edenton, &c., from outside of the bar to Beacon Island Road or Wallace Channel, leaving the rates through the swashes the same.
 

 This act has no reference to the pilotage allowed by the forty-first and forty-second sections, and expressly confines itself to the fortieth section, by quoting and reciting so much of that section as the act is intended to apply to.
 

 This makes the whole subject plain. The thirty-eighth section allows the same compensation
 
 as is allowed by laio
 
 for pi. lotage. The rates of pilotage at one inlet are changed by the act of 1846; the rates at the others remain the same ; the effect is, that the rate of compensation is changed at one inlet, and re
 
 *339
 
 mains tbe same at the other — and this by force of the general terms, i. e., the compensation is to be the same
 
 as is allowed by law
 
 for pilotage.
 

 It is said, in the second place, that the 30th section of the Pilot Act conflicts with the thirty-eighth section, and compensation is not allowed between April and October.
 

 The thirtieth section is an amendment made in 1836, and it must be admitted, as it gives no explanation of itself, that its insertion does throw some confusion on the construction of the chapter taken as a whole. In such cases, the rule of construction is to reconcile the different parts, if it can be done. It is suggested, that the thirtieth section applies only to vessels
 
 hound out,
 
 and is entirely consistent with the thirty-eighth section, which is confined to those
 
 bound in.
 
 It is probable this is the true solution of the apparent conflict; but whether it be so or not, the thirtieth section must give way to the thirty-eighth; for the latter, in positive and express terms, entitles the pilot to compensation. The former can only be made
 
 by inference
 
 to exclude the right to compensation during a certain time of the year* from the fact it allowed compensation during the other part of the year. In other words, the conflict can only be made by an inference drawn from the fact that the thirtieth section may be treated as an affirmative pregnant. There can be no sort of doubt, that an inference of this kind must give way to an express and positive enactment; in fact, such an enactment excludes the inference, and prevents it from being made.
 

 Again, it is insisted, a single justice had no jurisdiction. It is not a debt due on special contract, or for goods sold and delivered, or for work and labor done, or a contract express or implied ; it was only a tender to do work.
 

 We think it clear, that the plaintiff is entitled to the compensation for work and labor done, under a contract created by law, in the same way that the right to pilotage is under a contract, created by law. In the one case, the pilot takes charge of the vessel; in the other, he goes out to sea, and is at the trouble of coming back. This is work and labor which he is required by
 
 *340
 
 law to do, and for doing it, tbe law entitles bim to tbe same sum as is allowed by law for conducting tbe vessel in. Both are put on tbe same footing.
 

 Again, it is said, tbe cause of action is not stated with certainty. Plaintiff does not allege be was a pilot, or that be crossed tbe bar and tendered bis services, &c., and be refers to but one statute.
 

 Warrants issued by a single justice are usually treated as the plaintiff’s declarations, as well as the leading process; but tbe plaintiff may, if be chooses, file a declaration in addition to the warrant, and set out more at large and in detail bis cause of action, (taking care, of course, to make no departure;) just as be can in bis declaration set out bis cause of action more at large than it is in tbe writ. It would be strange, if a plaintiff is bound more strictly by a warrant issued by a single justice for a debt, or is required to be more particular in the specifications, than be is by a writ issued for a debt, from a Court of record.
 

 In this case, according to tbe practice of the members of the bar, by which declarations are, in most cases, waived, the plaintiff is entitled to tbe benefit of being considered as having filed a declaration according to the facts set out in tbe case agreed. If so, these difficulties for tbe want of particularity, &c., are all removed.
 

 Judgment affirmed.