THOMPSON *v.* DARDEN.

ERROR TO THE SUPREME COURT OF APPEALS OF THE STATE OF VIRGINIA.

No. 159. Argued March 3, 1905.—Decided May 15, 1905.

Congress has power to permit, and by the act of 1789 and § 4235, Rev. Stat., has permitted, the several States to adopt pilotage regulations, and this court has repeatedly recognized and upheld the validity of state pilotage laws. The Virginia pilot law is not in conflict with § 4237, Rev. Stat., prohibiting discriminations because it imposes compulsory pilotage on all vessels bound in and out through the capes, and does not impose it on vessels navigating the internal waters of the State; nor can this objection be sustained on the ground that the navigation of the internal waters of Virginia is more tortuous than that in and out of the capes.

If a state pilot law does not conflict with the provisions of the Federal statutes in regard to pilotage this court cannot avoid its provisions because it deems them unwise or unjust.

This court will not investigate or decide a proposition which was not raised in the court below and is based upon conjecture, even though the facts suggested might have existed.

THE facts are stated in the opinion.

*Mr. Robert M. Hughes* for plaintiff in error:

This statute violates Art. I, § 9, cl. 6, U. S. Const., which provides that no preference shall be given by any regulation of commerce or revenue to the ports of one State over those of another. This clause applies both to Federal and state legislation. *Passenger Cases,* 7 How. 414; *The Lizzie Henderson,* Fed. Cas. No. 17,726a.

Under § 1965, Virginia Stat., every vessel inward bound

from sea must take a Virginia pilot; and under § 1963 it is made a crime for any person not a Virginia pilot, or for a Virginia pilot after removing from the State, to conduct a vessel to or from sea.

The statute works a discrimination in favor of voyages between Virginia ports and Maryland ports. No pilot fee is imposed for such a voyage, and yet a pilotage fee is imposed for all vessels coming from sea to a Maryland port, which includes all vessels coming from other States. Therefore, under this law, a vessel plying between a Virginia port and a Maryland port is exempt from pilotage, unless it voluntarily chooses to employ a pilot, and a vessel coming from the port of any other State to a Maryland port is required to pay pilotage. *Guy* v. *Baltimore,* 100 U. S. 434; *Brewing Co.* v. *McGillivray,* 104 Fed. Rep. 258; *The John M. Walsh,* 2 Fed. Rep. 364; *Booth* v. *Lloyd,* 33 Fed. Rep. 593.

The law is in conflict with § 4237, Rev. Stat., which prohibits discriminations. *Spraigue* v. *Thompson* 118 U. S. 90; *The Undaunted,* 37 Fed. Rep. 662; *Atlee* v. *Union Packet Co.,* 21 Wall. 396.

Section 4237 applies as well to cases where pilotage is voluntary as to cases where it is compulsory, under § 1963 of the Virginia pilot law.

This court will take judicial notice that there are no sea ports on the outside Virginia coast and the commerce is handled from the bay ports. *Brown* v. *Piper,* 91 U. S. 37; *Minnesota* v. *Barber,* 136 U. S. 313, 330.

Thus the question in this case reduces itself simply to the issue whether a State can do indirectly what it is forbidden to do directly; whether it can word a statute in such a way as to apply ostensibly to waters where it has no ports as an excuse for making it apply to other States having ports. *Minnesota* v. *Barber, supra; Wright* v. *Wright,* 141 U. S. 62; *Brimmer* v. *Rebman,* 138 U. S. 78.

The law violates § 4236, Rev. Stat., under which a master in boundary waters can take the pilot of either State. Chesa-

peake Bay is a boundary between Maryland and Virginia and under this law a master must take a Virginia pilot and cannot take a Maryland pilot. As to the Delaware cases in which has been held a boundary between Delaware and Pennsylvania involving similar question, see *The Clymene,* 9 Fed. Rep. 164; *S. C.,* 12 Fed. Rep. 346; *Abercorn,* 26 Fed. Rep. 877; *S. C.,* 28 Fed. Rep. 384; *South Cambria,* 27 Fed. Rep. 525.

*Mr. D. Tucker Brooke* and *Mr. John W. Daniel,* with whom *Mr. R. C. Marshall* and *Mr. Fred Harper* were on the brief, for defendant in error:

*Olsen* v. *Smith,* 195 U. S. 332, covers this case and the act is constitutional. Art. I, § 9, cl. 6, of the Constitution of the United States is not violated. *Passenger Cases,* 7 How. 283, 406, 414; *Munn* v. *Illinois,* 94 U. S. 135; *Morgan* v. *Louisiana,* 118 U. S. 467; *Johnson* v. *Chicago,* 119 U. S. 400; Black's Const. Law, 303; Miller's on Const., 576.

The law does not violate the Revised Statutes.

For history of pilot laws, state and Federal, see 2 Henning's St. at L. 39; Virginia act of 1775; 6 Henning's St. at L. 490; *Ex parte McNeil,* 13 Wall. 238; *The Chase,* 14 Fed. Rep. 854; act of Congress of 1789; Virginia Code of 1887, p. 495, § 1965; Virginia Code of 1873, ch. 91, § 12, p. 772; act of April 21, 1882, p. 392.

The map of Virginia disproves the assertion that there is any discrimination in the Virginia statutory law as to "*rates of pilotage*" in navigation, outward or inward bound, from or to the Chesapeake Bay and the sea. Indeed, there is no discrimination of any kind as between "vessels sailing between the ports of one State" (Virginia), as one class, and "vessels sailing between ports of different States," as another class.

Seacoast and inward pilotage is required by Virginia from any vessel "inward bound from sea" through the Cape channel to inland ports, no matter from what port it comes over seas, and no matter to what port it is bound inward. The "Sea" or "Ocean" means the great mass of waters that surround or

encompass the land; and "The High Seas" means the unenclosed waters of the ocean. They include the waters on the seacoast which are without and seaward of low-water mark on the seacoast. Bouvier's Law Dictionary, High Seas and Sea. Coastwise voyages are on the sea.

The pilotage systems require diversities or plans to meet local necessities, and are local, not national, in their nature.

In *Cooley* v. *Port Wardens*, 12 How. 299, the statute did not apply to ports "within the River Delaware," showing that the Pennsylvania legislature differentiated inland pilotage from that which related to waters over which vessels coursed to sea, just as the Virginia legislature has done, and covering, indeed, all the principles that are pertinent to this case and as to the constitutionality of our composite system of pilotage, which intermingles Federal and state statutes, or as to the power of the States under it to differentiate the plans adopted to meet the local necessities arising as to particular "bays, inlets, rivers, harbors, and ports," see *Ex parte McNeil*, 13 Wall. 236; *Steamship Co.* v. *Joliffe*, 2 Wall. 450; *Spraigue* v. *Thompson*, 118 U. S. 90; *Oslen* v. *Smith*, 195 U. S. 332.

Pilotage laws should be liberally construed. *Smith* v. *Swift*, 8 Metc. 332. *The Charlton*, 8 Asp. M. C. 29. There are no discriminatory features in the act and plaintiff in error errs in his analysis of the law.

MR. JUSTICE WHITE delivered the opinion of the court.

The law of the State of Virginia imposes compulsory pilotage on all vessels inward bound from sea through the Virginia capes, other than coasting vessels having a pilot's license, no matter to what port or point the vessel may be bound, and likewise imposes compulsory pilotage on all vessels outward-bound through the capes. The compulsory pilotage inward bound from the sea extends no further than to Newport News, Smith's Point, Yorktown or Norfolk, and the compulsory pilotage outward bound through the capes commences at said

points respectively.　In the inland waters of Virginia above the points named compulsory pilotage does not prevail, but pilotage is regulated and rates therefor are provided, the duty being imposed, except where the statutes otherwise provide, of using only a licensed Virginia pilot if the services of a pilot are taken.　Virginia Code of 1887, §§ 1963, 1965, 1966, 1978 and 1900.　Reference is made in the brief of counsel for the defendant in error to Virginia colonial legislation, (1775), imposing compulsory pilotage on vessels inward bound from sea through the capes, accompanied with the statement, which is unchallenged, that from that time to the present date there has been no period when compulsory pilotage regulations of a like nature have not prevailed in Virginia.　The contentions of the plaintiff in error arising on this record assail the validity of the pilotage laws now in force.　The controversy thus arose.

In August, 1902, the schooner William Neely, engaged in the coastwise trade between New England and Virginia, Abram P. Thompson, master, when bound in from sea to Norfolk, was offered by Joseph J. Darden, a licensed Virginia pilot, his services, which were declined.　Thereupon Darden, the pilot, sued Thompson, the master, in the court of law and chancery of Norfolk, for his pilotage charge.　Thompson demurred on the ground that the Virginia statutes as to pilotage were void because repugnant to the Constitution and laws of the United States, for various reasons, which were specified in the demurrer.　The trial court sustained the demurrer. Darden, taking the record to the Court of Appeals of Virginia, applied for a writ of error, which was not a matter of right. The court allowed the writ, heard the cause, and, for reasons expressed in a full and careful opinion, reversed the judgment and remanded the cause for a new trial.　101 Virginia, 635. At the new trial Thompson reiterated, by way of offers of evidence and other proceedings, the objections which had been expressed in the demurrer, and preserved his rights by exceptions taken to the action of the trial court which adjudged

against him. He then carried the record to the Court of Appeals and applied for a writ of error, which was refused, and thereupon this writ was sued out.

In the argument at bar seven grounds of error are stated, and in referring to them generally many minute suggestions are made concerning the pilotage statutes, by way of indicating that discrimination arises from them. They mainly relate to the statutes regulating pilotage in the internal waters. Whilst we have given these suggestions our attention, we content ourselves with saying that we deem them to be devoid of merit. The more so because in the written argument the discussion is expressly limited to the first, second and fifth grounds of alleged error. These we proceed to consider.

1st. "This statute violates Article 1, section 9, clause 6, of the Federal Constitution, which provides that no preference shall be given by any regulation of commerce or revenue to the ports of one State over those of another." In effect this proposition denies the power of Congress to permit the several States to adopt pilotage regulations, despite the recognition of that authority by Congress as early as 1789, Rev. Stat. 4235, and the repeated adjudications of this court recognizing and upholding the practice on the subject which has obtained from the beginning. *Olsen* v. *Smith*, 195 U. S. 332, and authorities there cited.

2d. "The Virginia pilot law is in conflict with section 4237 of the United States Revised Statutes." The section in question was quoted and commented on in *Olsen* v. *Smith*, *supra*, and avoids the provisions of all state regulations making "any discrimination in the rate of pilotage or half pilotage between vessels sailing between the ports of one State and vessels sailing between the ports of different States, or any discrimination against vessels propelled in whole or in part by steam, or against national vessels of the United States." It cannot be said that the pilotage charge for vessels bound in and out through the capes is in and of itself discriminatory, since it imposes a like compulsory pilotage charge upon all vessels

bound in and bound out. Speaking of the requirements of
the statute, the Supreme Court of Appeals of Virginia said in
its opinion in this case:

"By the provisions of the sections of the Code quoted all
vessels (except coastwise vessels with a pilot license) inward
bound from the sea to Smith's Point, Yorktown, Newport News
or Norfolk, or any intermediate point, and all such vessels
outward bound to the sea from Smith's Point, Yorktown, New-
port News, or Norfolk, or any intermediate point, are subject
to the compulsory regulations and rates therein provided.
All vessels are subject to the same regulations, and, under the
same circumstances and conditions, are required to pay the
same fees."

The arguments made to support the assertion that the pilot
laws conflict with the act of Congress are twofold. First. As
the State of Virginia has no appreciable commerce from her
own ports inward bound through the capes, therefore there is
discrimination. Second. As Virginia has chosen by her legis-
lation not to subject commerce on her internal waters to a
compulsory charge for pilotage, therefore there is a discrimina-
tion in favor of commerce on the internal waters of Virginia
and against commerce bound in and out through the capes
from and to the sea. In other words, the proposition is that
the State of Virginia was without power to make an undis-
criminating regulation as to pilotage for ships bound in and
out through the capes, unless a like regulation was made
applicable to all the internal waters within the State. This
is attempted to be sustained by contending that the naviga-
tion of the internal waters of Virginia is more tortuous than
is the navigation in and out of the capes, and other suggestions
of a kindred nature.

But the unsoundness of the proposition is made manifest
from its mere statement. In effect, it but denies the power
of Virginia to regulate pilotage, and presupposes that courts
are vested with authority to avoid the pilotage regulations
adopted by the States, which do not discriminate as to com-

merce to which they apply, simply because it is deemed. they are unwise or unjust. As pointed out in *Olsen* v. *Smith,* an objection based on the assumed injustice of a pilotage regulation does not involve the power to make the regulation. Objections of this character, therefore, if they be meritorious, but concern the power of Congress to exercise the ultimate authority vested in it on the subject of pilotage.

3d. "The pilot law violates section 4236 of the Revised Statutes, which provides: 'The master of any vessel coming into or going out of any port situate upon waters which are the boundary between two States, may employ any pilot duly licensed or authorized by the law of either of the States bounded on such waters, to pilot the vessel to or from such port.'" It is said that whilst it may be difficult to say that the waters of the Chesapeake Bay between the capes constitute a boundary, still it is possible to so conclude. We observe concerning this contention that it does not appear to have been raised in the courts below. It is accompanied with no suggestion that the State of Maryland has ever attempted to regulate pilotage between the capes of Virginia, to which the Virginia statute relates, or that any Maryland pilot offered his services. The proposition, therefore, rests upon a series of mere conjectures, which we cannot be called upon to investigate or decide.

*Judgment affirmed.*