CANADA ATLANTIC TRANSIT CO. et al. v. CITY OF CHICAGO.

(Circuit Court of Appeals, Seventh Circuit. October 7, 1913.)

No. 1,959.

1. COMMERCE (§ 10*)—NAVIGABLE WATERS (§ 2*)—REGULATION OF NAVIGATION THROUGH BRIDGES—POWERS OF MUNICIPALITY.

An ordinance of the city of Chicago, requiring all vessels when passing any bridge in the Chicago river to move at a rate of speed of not less than two miles an hour, and all vessels of 1,200 tons gross burden or more when moving through or between bridges in certain parts of the river to have the assistance of tugs, is not invalid as an interference with the rights of navigation or with interstate commerce, but is within the powers of the municipality in the absence of any legislation by Congress on the subject.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 8; Dec. Dig. § 10;* Navigable Waters, Cent. Dig. §§ 2, 63; Dec. Dig. § 2.*]

2. MUNICIPAL CORPORATIONS (§ 63*) — ORDINANCES — REVIEW BY FEDERAL COURTS.

The power of the city to enact such an ordinance being clear, a federal court cannot adjudge it invalid as unreasonable merely because the court may believe from the evidence that it is unnecessary; the presumption being that local conditions render it reasonable and necessary.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 155, 1378, 1879; Dec. Dig. § 63.*]

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois; George A. Carpenter, Judge.

Suit in equity by the Canada Atlantic Transit Company, the Erie & Western Transportation Company, the Lehigh Valley Transportation Company, the Rutland Transit Company, the Erie Railroad Company, and the Western Transit Company against the City of Chicago. Decree for defendant, and complainants appeal. Affirmed.

This appeal is from a decree of the District Court, whereby appellants' bill for injunctional relief against the city of Chicago is dismissed for want of equity, on final hearing of the issues and testimony thereunder.

The appellants joining in the bill operate respectively various steam vessels navigating the Great Lakes between several ports thereof, inclusive of the port of Chicago and Chicago river—all engaged in interstate commerce. Their bill sets forth alleged injuries caused by the requirements of an ordinance adopted by the city of Chicago, in reference to navigation of the Chicago river, and

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

challenges the validity of such ordinance upon various grounds. The ordinance referred to was adopted December 13, 1909, as an amendment to the Revised Municipal Code, and reads as follows:

"Sec. 1014. Speed at Bridges—Forbidden Anchorage—Penalty: All vessels, steamboats, propellers, tugs or other craft navigating the harbor, when passing any bridge shall be moved past the same as expeditiously as is consistent with a proper movement in the harbor; but in no case shall any such craft while passing any bridge and obstructing the passage across such bridge, move at a rate of speed less than two miles per hour, and in no case shall any vessel, steamboat, propeller, tug or other craft, while passing any bridge and obstructing the same, remain or obstruct the passage across such bridge more than five minutes; and no vessel, craft or float shall be so anchored, laid, moored or fastened or brought to a stop, as to prevent any bridge from a free and speedy opening or closing, or any vessel from a free and direct passage, nor shall any line or fastening be so thrown, laid or made fast as to cross the track of any bridge or vessel, under a penalty of not less than twenty-five dollars for each offense, to be recovered from the master or other person having charge of such vessel, craft or float."

"Sec. 1016. Steam tugs for Vessels—Penalty: All vessels, craft or floats not propelled by steam, navigating the harbor, for which the opening of any bridge may be necessary, shall while approaching and passing such bridge be towed by a steamtug. Any steamboat, vessel, craft or float propelled by steam of twelve hundred (1,200) tons gross burden or more, while navigating the portion of the Chicago river bounded by the Rush street bridge on the east, the Twelfth street bridge on the south and the Chicago avenue bridge on the north, all inclusive, shall have the assistance of a tug or tugs. It shall be unlawful for any steamboat, vessel, craft or float of twelve hundred (1,200) tons gross burden or more to back through any bridge draw in the Chicago river or the Calumet river within the limits of the city of Chicago without the assistance of a tug or tugs.

"Any person owning or in charge, possession or control of any such vessel, craft or float, who shall navigate or cause to be navigated such vessel, craft or float in the harbor in violation of any of the provisions of this section, shall be fined not less than twenty-five dollars nor more than one hundred dollars for each offense."

Nicholas W. Hacker, of New York City, Edward T. Glennon, Robert J. Cary, Bertrand Walker, and Herbert D. Howe, all of Chicago, Ill., for appellants.

William H. Sexton, Corp. Counsel, and Charles M. Haft, Asst. Corp. Counsel, both of Chicago, Ill., for appellee.

Before BAKER, SEAMAN, and KOHLSAAT, Circuit Judges.

SEAMAN, Circuit Judge (after stating the facts as above). The city of Chicago has adopted an amendment to the Revised Municipal Code, in reference to navigation in the harbor and river in Chicago, which prescribes (section 1014) that vessels passing any bridge shall move at a rate of speed not less than two miles per hour and shall not obstruct "passage across such bridge more than five minutes," and further requires (section 1016) that steam vessels of 1,200 tons gross burden or more, while navigating portions of the river defined in the amendment, "shall have the assistance of a tug or tugs"; and the issue upon this appeal is the validity of these provisions. Their validity is challenged by averments of the appellants' bill, filed for injunctional relief, upon two propositions in substance: First, that the requirements interfere with rights of navigation and interstate commerce, not within the authority of state or municipality, but subject alone

to federal control; and, second, that they are unreasonable, imposing unfair burdens on the appellants' steamers, if otherwise within the powers of the municipality. On final hearing of the issues, considerable testimony was introduced, as reported by Special Examiner— mainly directed for and against the proposition of unreasonableness— and all contentions for relief were overruled by the District Court and the bill dismissed for want of equity.

[1] 1. The primary contention of want of power in the municipality to prescribe and regulate the means and methods of navigation in the river as a highway of commerce is met and refuted, as we believe, in so far as the regulation conflicts with no rule established by Congress for such navigation, by decisions of the Supreme Court which are both numerous and uniform in the substance of their doctrine; for instance, in Owners of Brig James Gray v. Owners of Ship John Fraser, 62 U. S. (21 How.) 184, 187, 16 L. Ed. 106, and Gilman v. Philadelphia, 3 Wall. 713, 18 L. Ed. 96, as the earlier cases, and in Escanaba Co. v. Chicago, 107 U. S. 678, 2 Sup. Ct. 185, 27 L. Ed. 442, and Cummings v. Chicago, 188 U. S. 410, 23 Sup. Ct. 472, 47 L. Ed. 525, as later and directly pertinent rulings.

The doctrine thus settled is comprehensively stated and applied in Escanaba Co. v. Chicago, supra—in reference to the power of the city of Chicago to regulate navigation of the river, pursuant to an ordinance prescribing hours when bridges shall not be opened for the passage of vessels, and that during other hours named they shall not be opened for a longer period than ten minutes at any one time and shall then "be closed for fully ten minutes" for passage of teams and persons "waiting to pass over"—and may be epitomized as follows: The power of Congress is supreme over all navigable waters, to "exercise control to the extent necessary to protect, preserve and improve their free navigation"; but this federal power of control is usually exercised only in matters which "are national in their character and admit and require uniformity of regulation affecting all the states" and waterways. It is well recognized, therefore, that general regulations of navigation adopted by Congress cannot reasonably be made to answer various local requirements in ports and rivers within the states, and that the several states retain and "have full power to regulate within their limits matters of internal policy," which includes regulation of navigation in a waterway like the Chicago river, crowded with shipping and spanned by numerous bridges, in the midst of a great commercial metropolis. So, under the sanction of the state, the city of Chicago is authorized to regulate use of the bridges and river within the city, in accordance with local conditions and needs, "until Congress interferes and supersedes" such regulation. "If the power of the state and that of the federal government come in conflict, the latter must control and the former must yield;" but "until Congress acts upon the subject" municipal regulation for local purposes is within the authority of the state.

Again, in the recent case of Cummings v. Chicago, supra, the above ruling was reaffirmed and its doctrine applied, for denial of relief sought against the city to prevent enforcement of an ordinance which required permit from the city department of public works for con-

struction or reconstruction of docks within the city. The bill presented these facts: Complainant, as owner of property on the Calumet river (within the city), intended and was proceeding in disregard of such ordinance, to rebuild docks thereon, under written permit granted by the Secretary of War to that end, pursuant to prior acts of Congress providing for improvement of Calumet river. In conformity with the acts referred to, the War Department had made surveys and improvements, fixed dock lines, and granted permits under which docks had been built, including those in question for which like permit had been granted for reconstruction. As stated in the opinion, the issue was whether the acts of Congress referred to were intended "to supersede, for every purpose, the authority of Illinois over the erection of structures in navigable waters wholly within its limits," and it was decided (citing Lake Shore & Mich. Ry. v. Ohio, 165 U. S. 365, 17 Sup. Ct. 357, 41 L. Ed. 747) "that no such purpose was manifested by the acts in question;" that their effect, "reasonably interpreted, is to make the erection of a structure in a navigable river, within the limits of a state, depend upon the concurrent or joint assent of the national government and the state government"—although not so mentioned in the act—so that both assents must be obtained to authorize the structure.

We are of opinion, therefore, that the regulations provided in the ordinance in controversy, for navigation in the Chicago river, are clearly within the nature and scope of powers vested in the city, as recognized and established by the above-mentioned line of authorities, and that all the contentions on behalf of the appellants in derogation of such power inherent in the state, must be overruled. It is unquestionable that the provisions by municipal ordinance upheld in the Escanaba Co. Case and in other precedents referred to constitute regulations of navigation in ports and rivers within the limits of the municipality, and are entirely analogous in their subject-matter to the provisions of this ordinance, and that the ordinance enforced in the Cummings Case reaches far beyond the scope of power involved herein, so that the force of their doctrine as precedents arises out of the facts involved therein and does not depend on reasons for the ruling stated in the opinions. Thus the contention, that the distinction between national control over waterways and navigation and the exercise of control over transportation by land, appears to have been overlooked "in discussing the subject of regulation of commerce by water," were it assumed to be tenable, is beside the issue and calls for no intimation of opinion. In reference to the provision that steamers of 1,200 tons burden "shall have the assistance of a tug" in navigation through and between bridges, we believe it to be plainly directed as a means for safety and celerity of movement in the crowded thoroughfare, and that it does not constitute "a pilotage regulation" in any recognized sense of the use of a pilot to supplant the master in navigation of the vessel. The objection raised for unreasonableness of the requirement relates alone to the exercise of the power and not to its existence, for which the test must be whether the city can require use of a tug in such navi-

gation under any conditions; and we have no doubt of its power to that end as both needful and inherent.

[2] 2. Their challenge of the ordinance for unreasonableness imposes upon the appellants the most difficult burden of proof established for any issue, in law or equity. Neither preponderance of evidence, nor proof which convinces the court of want of justifiable cause for the requirements, can serve to authorize judicial interference with legislative action upon a subject within the power of state or municipal legislation. In such case it must be presumed under our form of government that the regulations are enacted in conformity with public opinion in the locality based on familiarity with local conditions, as needful for reasonable speed and safety in navigation through and between bridges. This presumption is fortified by evidence in the present record of the existence of such public opinion; and neither the character nor the extent of testimony introduced by the appellants, tending to disprove such necessity for use of tugs in every movement of their steamers as required by the ordinance, and tending to show unreasonable delays and expense thereby imposed, can furnish sanction for annulment of the ordinance by judicial decree, as we believe, under the established rule of the federal jurisdiction. Sufficient citations for the rule referred to are these recent decisions: Jacobson v. Massachusetts, 197 U. S. 11, 25 Sup. Ct. 358, 49 L. Ed. 643, 3 Ann. Cas. 765; Laurel Hill Cemetery v. San Francisco, 216 U. S. 358, 30 Sup. Ct. 301, 54 L. Ed. 515; Adams v. Milwaukee, 228 U. S. 572, 33 Sup. Ct. 610, 57 L. Ed. 971 (decided May 12, 1913); and cases cited. As strongly stated by Mr. Justice Holmes, speaking for the court, in Laurel Hill Cemetery v. San Francisco, supra:

"If every member of this bench clearly agreed" that the theory and policy adopted in the ordinance were "wholly wrong, it would not dispose of the case. * * * Opinion still may be divided, and if, on the hypothesis that the danger is real, the ordinance would be valid, we should not overthrow it merely because of our adherence to the other belief."

Plainly, therefore, any impressions we may have derived from the evidence that some requirements of the ordinance for use of a tug are in excess of any seeming need for public benefit and impose an unreasonable burden on the steamers would not authorize interference on the part of the court. If modification is found to be reasonable, it rests with the city, and not with the courts, to make the correction; and the only other remedy open to appellants is through the exercise of the plenary power of Congress to supersede or modify the requirements. Olsen v. Smith, 195 U. S. 332, 345, 25 Sup. Ct. 52, 49 L. Ed. 224; Thompson v. Darden, 198 U. S. 310, 317, 25 Sup. Ct. 660, 49 L. Ed. 1064.

The decree of the District Court is affirmed.