M. T. CRAIG ET AL. v. GULF BARGE AND TOWING COMPANY.

(Filed 2 July, 1931.)

**Pilots B a—Barge held liable to State pilotage under C. S., 6955.**

A barge dependent entirely upon motive power furnished by a tug or other towing vessel is not a vessel "propelled in whole or part by steam" within the meaning of U. S. C. A., Title 46, section 361, and does not come within the provisions of section 215, which provides that no State shall require of such vessels a state or other license in addition to that issued by the United States, and a barge of over sixty gross tons having a United States licensed pilot on board is subject to pilotage, tender and refusal under C. S., 6955, upon entering North Carolina waters, and where State pilotage has been refused, is under the same liability as to performance. C. S., 6991.

APPEAL by defendant from *Daniels, J.,* at October Term, 1930, of NEW HANOVER.

Civil action by pilots of the Cape Fear River and Bar to recover fees, aggregating $795, alleged to be due for pilotage services tendered at different times to three barges belonging to the defendant, which services were refused by the masters in charge of said barges.

The facts upon which it is agreed the rights of the parties depend, appear in the record as follows:

"1. It is admitted that the barges 'S. D. Warriner,' 'Northern Light' and 'Waukersha' were at the times mentioned in the complaint owned by, or chartered from their respective owners, and were operated, by the defendant at the times the plaintiffs' claims arose, and at which times the charterer was using said barges in the coastwise trade of the United States at the times set forth in the complaint, and each of the said barges was enrolled as a coastwise vessel of the United States in conformity with the provisions of the act of the United States in such case provided, and neither of said barges or vessels was or is equipped with machinery, sails or appliances making her movable by and with her own equipment or power, and that other and independent means had to be called in aid when either of said barges was navigated or moved, and that each of them, at the times stated in the complaint, was being navigated by being towed, moved, transported or propelled by a steam-tug vessel by means of a hawser or tow-line attached to said barge and thence to the tug—the barges being towed in the rear of the tug, the hawser or tow-line being about 150 feet long, the tug furnishing the motive power for the navigation of the barges, all of which barges being over 60 tons gross.

"2. That each of the said barges was towed as aforesaid on a voyage to Wilmington at the time alleged in the complaint on its incoming trip from some state south of North Carolina, and upon the ocean to or at a point near Cape Fear River bar, each of said tugs at the time having a pilot on board and in charge of the navigation of the barge who was regularly licensed by the United States authorities (under the provision of statutes, U. S. C. A., Title 46, secs. 214 and 215, R. S., 4442 and 4444), when each was timely spoken and pilotage service offered and tendered by some one of the plaintiffs who was at that time and is now a duly licensed pilot for the Cape Fear River and Bar according to the laws of North Carolina, and such pilotage service, so tendered by the plaintiffs or one of them, was on each occasion refused by the said barges, or the master in charge thereof, as it was claimed that the said barge was not required by law to take a pilot or pay pilotage, because the barges and each of them were at the time in charge of a pilot regularly licensed under the laws of the United States, who was on

board the barge and piloting it, and the master on the tug towing said barges was a duly licensed United States pilot, and that such fact exempted the barges from liability for compulsory pilotage under the laws of the State of North Carolina, and on each alleged voyage out from Southport over the Cape Fear River and Bar to sea said barges were duly spoken and pilotage services tendered by some one of the plaintiffs, North Carolina licensed pilots as aforesaid, on their voyage on the Atlantic Ocean to some state south of the State of North Carolina, and such pilotage services were refused upon the ground aforesaid, and the said barges were, as alleged in the complaint, towed in and out by the tug without accepting said State pilot's services tendered as aforesaid, which said pilotage services, if the barge or barges were liable for the same, and in the amounts set forth in the complaint.

"3. If under the admitted facts the barges were liable as a matter of law for pilotage services to those of the plaintiffs so tendering their services as North Carolina State licensed pilots, then the plaintiffs are entitled to recover all of the sums sued for in this action, and judgment accordingly shall be entered for the plaintiff, but if under the facts and law the barges were not liable for compulsory pilotage, then judgment shall accordingly be entered for the defendant."

Upon the facts agreed, judgment was entered for the plaintiffs, from which the defendant appeals, assigning errors.

*Bryan & Campbell for plaintiffs.*
*Rountree & Rountree for defendant.*

STACY, C. J. The question to be determined is whether barges of over 60 gross tons, having no motive power of their own, and being towed by steam tugs in and out of the harbor of Southport, are liable to compulsory pilotage dues under the State pilotage laws.

C. S., 6955, provides that "All vessels, coastwise or foreign, over 60 gross tons, shall take a State licensed pilot from sea to Southport, and from Southport to sea," and shall pay the designated rates of pilotage fixed by said section, etc. The statute imposes compulsory pilotage on all vessels coming within its terms. This is in the interest of safety to navigation. *St. George v. Hardie,* 147 N. C., 88, 60 S. E., 920; *Cooley v. Board,* 12 How., 312.

"The purpose of these laws is to insure at all times a due supply of men well qualified by skill, knowledge, and experience to protect vessels entering into ports and harbors from the dangers of navigation. They are engaged in a perilous calling, and must be ready to brave the perils of their vocation. To encourage such men, and to secure permanence in their ranks, every nation engaged in commerce, and all the states in the

Union having harbors, have enacted laws making it compulsory upon all vessels entering their ports, except those of very small tonnage, to employ a duly-licensed pilot for the purpose of piloting them." *Simonton, Circuit Judge,* in *The Carrie L. Tyler,* 106 Fed., 422.

There is an exemption in C. S., 6985, of "vessels, barges, schooners, or other craft passing through the inland waterway of the State," with the proviso that "steam vessels" not having on board a United States licensed pilot for the waters navigated shall be subject to pilotage.

It is the position of the defendant that these sections run counter to the act of Congress, U. S. C. A., Title 46—Shipping, sec. 213, which prohibits any discrimination in the pilotage laws adopted by a State.

Similar statutes enacted in Virginia were assailed upon the same ground and upheld in the case of *Thompson v. Darden,* 198 U. S., 310.

But aside from the decision in the *Thompson case,* section 215 of the Federal Act provides that no State shall impose upon pilots of "steam vessels" an obligation to procure a State or other license in addition to that issued by the United States, etc., with the proviso that nothing therein shall be construed to annul or affect any State regulation requiring vessels entering or leaving a port of the State, other than costwise steam vessels, to take a duly-licensed State pilot.

A steam vessel is defined in section 361 of the act of Congress as one that is "propelled in whole or in part by steam," and it is conceded that barges are vessels within the meaning of the law. It is further conceded that if defendant's barges are subject to pilotage, tender and refusal of such services, import the same liability as performance. C. S., 6991.

The case, then, narrows itself to a single point: Are the barges in question "steam vessels" within the meaning of the law? If they are, the judgment is erroneous. If they are not, it is correct. The answer depends upon whether they are propelled in whole or in part by steam within the meaning of the act of Congress.

For some purposes, especially in cases of collision, the tug and the tow are regarded as one vessel, just as a railroad engine and the cars drawn by it at a single time are regarded as one train. But in strictness, while the tug propels herself, she is said to "tow the tow," *i. e.,* she draws the vessel in tow either alongside or astern. And in strictness, an engine propels itself and draws or pushes the cars which go to make up the train.

Neither the industry of counsel nor our own research has resulted in the discovery of an American decision which would seem to be determinative of the exact question here presented. The case of *"The Carrie L. Tyler,"* 106 Fed., 422, cited by the plaintiffs, is almost in point, but not quite. Nor is the case of *The "Civilla"* and *The "Rest-*

*less,"* 103 U. S., 699, cited by defendant, controlling. *Anderson v. Steamship Co.,* 255 U. S., 187, contains a valuable opinion on the subject by *Mr. Justice Hughes* (now *Chief Justice*), but does not decide the point presently mooted.

The precise question was before the English Privy Council in the case of *The St. John Pilot Commissioners v. Cumberland Railway and Coal Co.,* Appeal Cases, 1910, Law Reports, 208. It was there held, reversing the Supreme Court of Canada, that barges moved by towage alone did not come within the meaning of "ships propelled wholly or in part by steam" as used in the Canadian Act, and that the word "propelled" had reference to the motive power possessed by the vessel herself, *"propellere navem remis"*—in Cicero's phrase, and did not embrace the idea of traction.

We are content to rest our decision on the reasoning of this case until the matter is decided by the Supreme Court of the United States.

Affirmed.