V. A. DAVIS et al., d/b/a St. Johns Bar Pilot Association, an unincorporated association, Plaintiffs,

v.

The BARGE "TMT" JACKSONVILLE, Defendant.

No. 77–69–Civ–J–C.

United States District Court, M. D. Florida, Jacksonville Division.

Dec. 3, 1979.

W. O. Birchfield, Stephen H. Durant, Jacksonville, Fla., for plaintiffs.

James F. Moseley, Jacksonville, Fla., for defendant.

## MEMORANDUM OPINION

GEORGE C. CARR, District Judge.

This matter is before the Court to consider the parties' Cross Motions for Summary Judgment. Oral argument was heard by the Court concerning these Motions on November 21, 1978. The facts are contained in a Stipulation, a copy of which is attached and incorporated into this Opinion.

### THE FACTS

The Plaintiffs in this case are the pilots licensed for service in the Port of Jacksonville, Florida. The Defendant is the barge "TMT JACKSONVILLE", and the claimant is the HARBOR TUG AND BARGE COMPANY. On January 14, 1977, the Tug "Defendant" towed the barge "TMT JACKSONVILLE" into the Port of Jacksonville on an inbound trip from San Juan, Puerto Rico. The "TMT JACKSONVILLE" was unmanned, while the "Defender" was manned by eight crew members who held various licenses that satisfied the standards for uninspected towing vessels under federal regulations. Both the "Defender" and the "TMT JACKSONVILLE" were properly enrolled with the Coast Guard for coastwise trade. Plaintiffs offered their pilotage services to the barge by radio transmission to the tug as the vessels proceeded up the St. Johns River, and this offer was refused.

## THE LAW

The crucial issue presented by the cross motions for summary judgment is whether federal statutes and regulations pertaining to coastwise trade apply to the Defendant, "TMT JACKSONVILLE," so that application of the Florida pilotage statute, *Fla. Stat.* § 310, is pre-empted.

Before the ultimate issue can be reached, the history of pilotage in the United States and the federal government's involvement in this area must be briefly examined. Chief Judge Brown provided an excellent overview of the historical development of federal intervention in this area in *Jackson v. Marine Exploration Co., Inc.,* 583 F.2d 1336, 1338–41 (5th Cir. 1978). *See also, Anderson v. Pacific Coast Steamship Co.,* 225 U.S. 187, 32 S.Ct. 626, 56 L.Ed. 1047 (1912); *Huus v. New York and Porto Rico Steamship Co.,* 182 U.S. 392, 21 S.Ct. 827, 45 L.Ed. 1146 (1902). (These two decisions interpret the antecedents of the applicable federal pilotage statutes, which are relatively unchanged). After years of avoiding legislation in the pilotage, area, Congress intervened in 1837 by distinguishing between the areas of state and federal jurisdiction. That distinction was modified in 1871, and remains essentially intact today. It is based upon the type of trade in which the vessel is engaged and the type of license that it holds:

> Ships engaged in trade with foreign lands are "registered", a documentation procedure set up . . . in the Act of December 31, 1792, 1 Stat. 287, and now codified in 46 U.S.C. § 2. . . . Vessels engaged in domestic or coastwise trade or used for fishing are "enrolled" under procedures established by the Enrollment and Licensing Act of February 18, 1793, 1 Stat. 305, codified in 46 U.S.C. § 12. *Jackson, supra* at 1340.

The federal government assumed control over "enrolled" vessels and left to state pilotage regulations control over "registered" vessels. 46 U.S.C. § 364 provides:

> All coastwise seagoing vessels, and vessels navigating the Great Lakes, shall be subject to the navigation laws of the United States, when navigating within the jurisdiction thereof; and all vessels propelled in whole or in part by steam, and navigating as aforesaid, shall be subject to all the rules and regulations established in pursuance of law for the government of steam vessels in passing, as provided by Title 52 of the Revised Statutes; and every coastwise seagoing steam vessel subject to the navigation laws of the United States, and to the rules and regulations aforesaid, not sailing under register, shall, when under way, except on the high seas, be under control and direction of pilots licensed by the Coast Guard.

Section 215 of United States Code Title 46 provides:

> No state or municipal government shall impose upon pilots of steam vessels any obligations to procure a state or other license in addition to that issued by the United States, or any other regulation which will impede such pilots in the performance of the duties required by Title 52 of the Revised Statutes; nor shall any pilot charges be levied by any such authority upon any steamer piloted as provided by Title 52 of the Revised Statutes; and in no case shall the fees charged for the pilotage of any steam vessel exceed the customary legally established rates in. the state where the same is performed. Nothing in Title 52 of the Revised Statutes shall be construed to annul or affect any regulation established by the laws of any state, requiring vessels entering or leaving a port in any such State, other than coastwise steam vessels, to take a pilot duly licensed or authorized by the laws of such State, or of a State situate upon the waters of such State.

The parties have stipulated that the "TMT JACKSONVILLE" was "properly enrolled with the Coast Guard for coastwise trade," and the voyage from San Juan to Jacksonville is considered coastwise trade, *Huus, supra.* Plaintiffs contend, however, that the barge is not governed by federal pilotage regulations because it is not steam propelled within the meaning of the applicable federal statutes. In support of this

position, Plaintiffs cite 46 U.S.C. § 361 which provides:

> Every vessel subject to inspection propelled in whole or in part by steam or by another form of mechanical or electrical power shall be considered a steam vessel within the meaning of and subject to all the provisions of this Act . . .

In further support of their position, Plaintiffs cite a 1931 North Carolina decision, *Craig v. Gulf Barge and Towing Co.*, 201 N.C. 250, 159 S.E. 424 (1931). Relying on a 1910 Privy Council decision interpreting a Canadian Statute, *Craig* held that "barges moved by towage alone did not come within the meaning of 'ships propelled wholly or in part by steam.'" Plaintiffs accordingly argue that since the "TMT JACKSONVILLE" is not steam propelled within the Privy Council definition adopted by the *Craig* Court, it is subject to state pilotage regulations.

■ Neither legal precedent nor logic compel this Court to concur with Plaintiffs' position. The *Craig* decision was based on a Privy Council interpretation of a Canadian Statute. While the Canadian and United States Statutes are similarly worded, their legislative history and development cannot be compared. Moreover, the Court is of the opinion that in passing 46 U.S.C. §§ 215 and 364, Congress did not intend to create the anomalous situation in which a barge, towed by a tug exempted from state pilotage regulations, is required to employ the services of a pilot since it is not technically "steam propelled." The Fifth Circuit recently addressed the issue of federal preemption of state pilotage regulations in *Jackson, supra*. The Court recognized the ambiguity surrounding the definition of "steam vessels" in 46 U.S.C. § 361, stating:

> Strong arguments can be mounted that § 361 defines "steam vessels" for all of Title 46, but the Attorney General has issued an opinion concluding that while clarifying legislation is desirable, § 361 should be construed to apply only to . . . 46 U.S.C. §§ 392, 406–412. *Jackson* at note 12 page 1341.

The Attorney General's view is bolstered by the decision in *Anderson, supra*, which held that "the words 'other than coastwise steam vessels' must be deemed to refer to those 'not sailing under register' to which the requirement of Federal pilots applied." In consideration of the Attorney General's Opinion in *Jackson*, the *Anderson* decision, and the illogical result that the Plaintiffs' interpretation would require, the Court finds that the state pilotage regulations are pre-empted by the federal statutes, and that the definition of "steam vessels" in 46 U.S.C. § 361 does not apply to §§ 215 and 364.

A Summary Final Judgment in favor of Defendant shall be entered simultaneously herewith in accordance with this Opinion.